UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| John G. Singletary, | ) | Case No. 1:24-cv-00439-BHH-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Aiken County Code Enforcement Division; | ) | |
| Rodney Cooper; Page Bayne; | ) | |
| Bradley Weimer; Chad Alexander; | ) | |
| and Joel Duke, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff John Singletary ("Plaintiff"), proceeding *pro se*, brings this civil action against the Aiken County Code Enforcement Division ("Code Enforcement"); Code Enforcement Inspector, Rodney Cooper ("Cooper"); Code Enforcement Director, Page Bayne ("Bayne"); Code Enforcement Deputy Director, Bradley Wiemer ("Weimer"); Aiken County Building Official, Chad Alexander ("Alexander"); and Assistant County Administrator, Joel Duke ("Duke") (collectively, "Defendants"). Plaintiff challenges certain actions taken by the Code Enforcement against his property located at 1051 Pine Street, Beech Island, South Carolina, 29842 (the "Property"). This matter is now before the Court upon Defendants' Motion to Dismiss.[1] (Dkt. No. 23.) For the reasons set forth below, the undersigned recommends the Court deny in part Defendants' Motion and stay this action, pending the outcome of Plaintiff's ongoing state court action.

---

[1] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., this matter has been referred to the undersigned for all pretrial proceedings.

1

## BACKGROUND

By way of background, on October 4, 2022, Aiken County (the "County") filed a civil action against Plaintiff as the owner of the Property, consisting of a residential apartment complex.[2] (Case No. 2022-CP-02-02277.) According to the County's complaint, Defendants Cooper and Alexander inspected Plaintiff's Property on or around June 8, 2022, in response to multiple tenant complaints regarding the conditions of their residences. Upon inspecting the Property, Defendants Cooper and Alexander noted numerous violations of the County's Code of Ordinances (the "Code")—*i.e.*, standing water in the hallway and kitchen areas; non-functioning smoke detectors; substandard electrical and plumbing systems, etc.—and gave Plaintiff a summary of the same. Defendant Cooper also issued Plaintiff a uniform ordinance summons pursuant to the Code, Chapter 15, Article IV, "Unfit Dwellings," Section 15-37.[3]

The County claims that Defendant Alexander sent Plaintiff a follow-up letter dated June 13, 2022, reiterating the Code violations that purportedly rendered the Property's dwelling units "unfit for human occupancy," and informing Plaintiff of "the minimum steps" he would need to take "to bring the property into compliance with applicable ordinances and building codes." Indeed, the letter notified Plaintiff that, "[d]ue to the extensive nature of necessary repairs," he

---

[2] The undersigned takes judicial notice of the records filed in Plaintiff's underlying state court proceedings. *See* Aiken County Public Index, https://publicindex.sccourts.org/aiken/publicindex/ (last visited Jan. 6, 2025); *see also Aloe Creme Labs., Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970) (explaining that a federal court may take judicial notice of the contents of its own records, as well as those records of other courts); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989); *Tisdale v. South Carolina Highway Patrol*, No. 0:09-cv-1009-HFF-PJG, 2009 WL 1491409, at *1 n.1 (D.S.C. May 27, 2009), *aff'd,* 347 F. App'x 965 (4th Cir. Aug. 27, 2009) (noting that the court may also take judicial notice of factual information located in postings on government web sites).

[3] Section 15-37 provides that,

> Whenever the county building official finds that there exist in the county, dwellings which are unfit for human habitation due to (a) dilapidation, (b) defects increasing the hazards of fire, accidents or other calamities, (c) lack of ventilation, light or sanitary facilities or (d) other conditions rendering such dwellings unsafe or unsanitary, dangerous or detrimental to the health, safety or morals or otherwise inimical to the welfare of the residents of the county, the county may exercise its police powers to repair, close or demolish any such dwelling.

must "retain the services of a licensed General Contractor." After Plaintiff apparently failed to respond to the County's instructions, Defendant Cooper "red-tagged" all six apartment units at the Property indicating that they were unfit for habitation. On September 19, 2022, the County's legal team sent Plaintiff a letter warning him that if he did not make the necessary repairs to the Property within ten days, the County would file an injunction action with the circuit court to abate the purported nuisance and unsafe conditions pursuant to S.C. Code § 6-29-950 and Section 15-47 of the Code.[4]

The County filed the injunction action on October 4, 2022, asserting that Plaintiff's Property was in violation of numerous municipal ordinances and had become a "nuisance" and "public safety hazard," such that "its use should be enjoined pursuant to S.C. Code § 6-29-950 until . . . placed into a fit and habitable condition." (Case No. 2022-CP-02-02277.) The County further argued that Plaintiff was also in violation of the South Carolina Residential Landlord and Tenant Act ("SCRLTA"), which requires a landlord to "comply with the requirements of applicable building and housing codes materially affecting health and safety" and "make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable

---

[4] Section 6-29-950 governs enforcement of zoning ordinances and provides remedies for violations:

> In case a building, structure, or land is or is proposed to be used in violation of any ordinance adopted pursuant to this chapter, the zoning administrator or other appropriate administrative officer, municipal or county attorney, or other appropriate authority of the municipality or county or an adjacent or neighboring property owner who would be specially damaged by the violation may in addition to other remedies, institute injunction, mandamus, or other appropriate action or proceeding to prevent the unlawful erection, construction, reconstruction, alteration, conversion, maintenance, or use, or to correct or abate the violation, or to prevent the occupancy of the building, structure, or land. Each day the unlawful erection, construction, reconstruction, alteration, conversion, maintenance, or use continues is considered a separate offense.

S.C. Code § 6-29-950(A). To that end, Section 15-47 of the Code states that the County has the power "to define and declare nuisances and to cause their removal or abatement by summary proceedings, criminal proceedings or otherwise." Chapter 15, Article IV, "Unfit Dwellings," Section 15-47.

condition."[5] S.C. Code § 27-40-440(a)(1), (2). Based on the above, the County asked that the circuit court order Plaintiff to abate the nuisance within a reasonable period of time and, to the extent he failed to do so, allow the County and its agents to enter upon the Property and abate the nuisance, with damages to be awarded for any cleanup, abatement and/or remediation costs incurred by the County relative to the Property.

On November 18, 2022, Plaintiff filed a *pro se* answer to the County's complaint, contending that the "entire complaint is baseless and moot based on the undeniable fact that an unconditional 'Judicial Order' was issued, stamped, and recorded in Aiken County Magistrate Court on August 23, 2022 completely absolving [Plaintiff] of any and all charges whatsoever in [the County's] entire complaint."[6] Plaintiff also filed what he labeled a "Notice of Removal," stating that the County's case "shall proceed hereinafter in the United States District Court for the District of South Carolina." That same day, Plaintiff filed his own separate federal Complaint in this Court (*Singletary I*), challenging certain actions taken by the Code Enforcement against his Property. *See* Case No. 1:22-cv-04147-BHH-MGB. The Court dismissed *Singletary I* on March 30, 2023, when Plaintiff failed to bring the case into proper form. Case No. 1:22-cv-04147-BHH-MGB, Dkt. No. 18.

Plaintiff filed the instant action on January 29, 2024 against Code Enforcement and its officers, again challenging the validity of the County's state court proceedings against his Property and the constitutionality of Code Enforcement's conduct in relation to the same. (Dkt. No. 1.) Specifically, the Complaint alleges violations of Plaintiff's constitutional rights pursuant to 42

---

[5] More specifically, the SCRLTA states that for premises containing more than four dwelling units, the landlord must "maintain in reasonably good and safe working order and condition all electrical, gas, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances, including elevators, supplied or required to be supplied by him." S.C. Code § 27-40-440(a)(5).
[6] The undersigned reiterates that the County's complaint was not filed until October 4, 2022. As a result, it is unclear how a "Judicial Order" issued over one month prior would have "absolved" Plaintiff of specific claims not yet filed.

U.S.C. §§ 1983, 1985, 1986, and 2000e; gross negligence; forgery of a public document pursuant to S.C. Code § 16-13-10; and breach of trust with fraudulent intent pursuant to S.C. Code § 16-13-230. (*Id*.)

The Complaint largely attempts to refute the allegations upon which the pending state court action rests by raising parallel federal claims against Code Enforcement and its officers. More specifically, the federal Complaint once again references, albeit vaguely, that Plaintiff was "completely absolved by judicial dismissal of all charges brought against him," and suggests that Code Enforcement's subsequent actions have therefore "deprive[d] [him] of his rights to invest for profit and own property in Aiken County" without due process. (Dkt. No. 1 at 9.) According to Plaintiff, Defendants Anderson and Cooper "orchestrated" a scheme that involved entering the Property "SWAT team style" without notifying Singletary; "harassing tenants" to file "untrue complaints" against him; and "backdating a fictious list of claims" that was fraudulently presented to the circuit court as evidence of purported notice. (*Id.* at 9–10.) Plaintiff claims that as a result of Defendants' alleged misconduct, he has suffered emotional distress, mental anguish, fear, anxiety, and loss of economic investment, and seeks $10 million in damages. (*Id.* at 8–9, 19.)

By Oder filed June 7, 2024, service was authorized on Defendants. (Dkt. No. 13.) In the Order, the Court directed the Clerk of Court to issue the summonses for Defendants and advised Plaintiff that he "is responsible for service of process." (*Id*. at 2.) On October 11, 2024, Defendants filed a Motion to Dismiss.[7] (Dkt. No. 23.) On October 15, 2024, this Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 24.) Plaintiff filed a response in opposition on December 6, 2024 (Dkt. No. 28), to which

---

[7] Defendants had been granted an extension of time to file an answer or otherwise plead. (Dkt. Nos. 20; 21.)

Defendants filed a reply (Dkt. No. 29). Defendants' motion has been fully briefed and is ready for review.

## DISCUSSION

In their motion, Defendants argue that dismissal is appropriate because: (1) the summonses on which service was attempted are facially defective; (2) Plaintiff failed to properly effectuate service on Defendants; (3) there is another action pending in state court concerning the same subject matter and so abstention is appropriate; and (4) the Complaint does not comply with the pleading requirements of the Federal Rules of Civil Procedure. (Dkt. No. 23.) The undersigned considers these arguments, below.

### A.    Summonses and Service

Defendants first seek dismissal under Rules 12(b)(2), 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure. (Dkt. No. 23 at 3–5.) Under Rule 12(b)(2), a defendant can move to dismiss a complaint for lack of personal jurisdiction. "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Under Rules 12(b)(4) and 12(b)(5), a defendant can move to dismiss a complaint where the process and service of process failed to comply with the requirements of Rule 4 of the Federal Rules of Civil Procedure. Here, Defendants argue the Court lacks personal jurisdiction over them because the summonses on which service was attempted are facially defective and the summonses and complaint were never properly served. (Dkt. No. 23 at 3–5.)

Rule 4(a) of the Federal Rules of Civil Procedure sets forth the required contents for a summons. Per Rule 4(a), the summons must include, *inter alia*, the name of the parties; the plaintiff's address; the clerk's signature; and the court's seal. Fed. R. Civ. P. 4(a)(1). Additionally,

Rule 4(e)(2) governs the service of process upon individuals[8] and provides that it can be accomplished by (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(2). Rule 4(j)(2) of the Federal Rules of Civil Procedure governs the service of process upon local governments[9] in the United States and provides that it can be accomplished by either (A) delivering a copy of the summons and complaint to its chief executive or (B) serving a copy of each in the manner prescribed by the state's law for serving a summons or like process on such a defendant. "[T]he word 'delivering' in Rule 4(j) indicates that personal service should be made upon that particular individual. 4B Fed. Prac. & Proc. Civ. § 1109 (4th ed).

      Rule 4(d)(6) of the South Carolina Rules of Civil Procedure governs the service of process upon "governmental subdivision[s]" and provides that it can be accomplished "by delivering a copy of the summons and complaint to the chief executive officer or clerk thereof, or by serving the summons and complaint in the manner prescribed by statute for the service of summons and complaint or any like process upon any such defendant." Under both the Federal and South Carolina Rules of Civil Procedure, the person serving the summons and complaint cannot be a party to the action. *See* Fed. R. Civ. P. 4(c)(2); S.C. R. Civ. P. 4(c).

      In their Motion, Defendants state that Plaintiff attempted service of the summonses and complaint by email. (Dkt. No. 23 at 4.) Defendants have submitted the summonses and complaint sent to them by Plaintiff. (Dkt. No. 23-1.) The record shows that the summonses sent by Plaintiff do not fully list the parties, omit Plaintiff's address, do not include the clerk's signature, and do

---

[8] The individual Defendants are Rodney Cooper, Page Bayne, Bradley Wiemer, Chad Alexander, and Joel Duke.
[9] The Aiken County Code Enforcement Division is a named Defendant.

7

not contain the court's seal. (*Id*. at 1–6.) Additionally, the complaint is dated August 9, 2022, and appears to be the pleading Plaintiff submitted in *Singletary 1*. *See* Case No. 1:22-cv-04147-BHH-MGB, Dkt. No. 1. In his response brief, Plaintiff claims that after the initial service attempt, "[t]he clerk subsequently issued the signed and stamped summons, which was then properly served upon the defendants and signed for by Aiken County." (Dkt. No. 28 at 3.) Plaintiff has not offered any proof of this service, however.[10]

Based on the current record, it appears Defendants have not been properly served given: (1) the incomplete summonses pursuant to Rule 4(a), which contained the wrong complaint; and (2) that Plaintiff, a party, attempted service by email. However, the "provisions of [Rule 4] should be liberally construed to effectuate service and uphold the jurisdiction of the court, thus insuring the opportunity for a trial on the merits." *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963). Noncompliance with Rule 4 does not mandate dismissal where the necessary parties have received actual notice of the suit and have not been prejudiced by the technical defect in service. *Id*. at 668-69. "[T]he real purpose of service of process is to give notice to the defendant[.]" *Scott v. Md. State Dep't of Labor*, 673 Fed. App'x. 299, 304 (4th Cir. 2016); *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc*., 733 F.2d 1087, 1089 (4th Cir. 1984) ("When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process.").

Here, the fact that Defendants are represented by counsel and moving to dismiss is common sense evidence that they have notice of the claims. "Ordinarily, dismissal is proper when there is prejudice to the defendant or where proper service is unlikely to be accomplished." *Reinhold v. Tisdale*, No. 8:06-CV-3311-MBS-BHH, 2007 WL 2156661, at *3 (D.S.C. Apr. 30, 2007).

---

[10] Pursuant to Rule 4(l)(1), "[u]nless service is waived, proof of service must be made to the court. Except for service by a United States marshal or deputy marshal, proof must be by the server's affidavit." Fed. R. Civ. P. 4(l)(1).

Defendants have made no demonstration that they are prejudiced. *See*, *e.g.*, *Wade v. Alamance Cty.*, No. 1:19-CV-619, 2020 WL 3846336, at *4 (M.D.N.C. July 8, 2020) ("Though Plaintiff has failed to comply with the rules [regarding proper service], the court finds the rules merit a 'liberal construction' since Defendant Alamance DSS has 'actual notice' of the suit."); *Alexander v. Stirling*, No. 6:19-CV-0215-HMH, 2019 WL 7605892, at *3 (D.S.C. Dec. 6, 2019) (finding no prejudice to defendants where they had notice of claim). And the Court cannot find that service on Defendants is unlikely to be accomplished based on the current record. Accordingly, the undersigned recommends that dismissal not be granted on the basis of lack of proper service. Instead, the Court should allow Plaintiff additional time to effectuate proper service upon Defendants.

### B.   Abstention

Defendants next argue that because there is another action pending in state court between Plaintiff and the County concerning the same subject matter, abstention and dismissal is appropriate in this case pursuant to the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971). (Dkt. No. 23 at 5–6.) Plaintiff does not respond to this argument in his response brief.

The *Younger* abstention doctrine counsels federal courts to abstain from equitably interfering with state criminal proceedings except in the most narrow and extraordinary of circumstances. *Younger v. Harris*, 401 U.S. 37 (1971). The Supreme Court has since made clear that the *Younger* abstention doctrine also applies "to noncriminal judicial proceedings when important state interests are involved." *See Harper v. Pub. Serv. Comm'n of W. VA.*, 396 F.3d 348, 351 (4th Cir. 2005) (referencing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). More specifically, the *Younger* Court noted that courts of equity should not

act unless the moving party has no adequate remedy at law and will suffer irreparable injury if denied equitable relief. *Younger*, 401 U.S. at 43–44.

From *Younger* and its progeny, the Court of Appeals for the Fourth Circuit has culled the following test to determine when abstention is appropriate: "(1) there are ongoing state judicial proceedings; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity to raise federal claims in the state proceedings." *Martin Marietta Corp. v. Md. Comm'n on Human Relations*, 38 F.3d 1392, 1396 (4th Cir. 1994) (citing *Middlesex Cnty. Ethics Comm'n*, 457 U.S. at 432); *see also Cinema Blue of Charlotte, Inc. v. Gilchrist*, 887 F.2d 49, 52 (4th Cir. 1989) ("What lies behind *Younger,* of course, is a broader rule of comity: namely, that federal courts should abstain from the decision of constitutional challenges to state action, however meritorious the complaint may be, whenever the federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests.") (internal quotation marks and citations omitted).

In this action, Plaintiff seeks monetary damages on all causes of action and does not seek declaratory or equitable relief against Defendants. (Dkt. No. 1 at 19.) "The Fourth Circuit has . . . consistently ruled that a district court applying abstention principles can only stay—not dismiss or remand—an action for monetary damages." *Whitt v. Seterus, Inc.*, No. 3:17-cv-1753-MBS, 2018 WL 1090001, at *4 (D.S.C. Feb. 28, 2018) (internal quotation marks and citations omitted). Indeed, "[a] stay ensures that a federal plaintiff who is unable to pursue damages in the parallel state proceedings can return to federal court and reassert his claim for damages without being time-barred." *Stewart v. Beaufort Cnty.*, 481 F. Supp. 2d 483, 494 (D.S.C. 2007). Notably, a stay also avoids "wasteful duplication of judicial resources" and provides "the benefit of the state court's views" where there are similar issues pending before the state court. *Suggs v. Brannon*, 804 F.2d

274, 280 (4th Cir. 1986) (citing *Giulini v. Blessing*, 654 F.2d 189, 193 (2d Cir. 1981)); *see also Clowdis v. Silverman*, 666 F. App'x 267, 269 (4th Cir. 2016) (noting that pending state proceeding "may rectify any constitutional violations" and offer the opportunity to "intelligently mediate federal constitutional concerns and state interests") (internal citations and quotation marks omitted). With this in my mind, the undersigned considers whether a stay based on abstention principles is appropriate under *Younger*.

Here, the first criterion is met because the County's complaint against Plaintiff is still pending before the Aiken County Court of Common Pleas. (*See* Case No. -2277.) The second criterion is also met because matters relating to "the local housing code" implicate important state interests. *See Rosero v. Baltimore Co.*, No. 1:18-cv-713- ELH, 2018 WL 1378826, at *3–4 (D. Md. Mar. 19, 2018) (collecting cases); *see also Moore v. City of Asheville, N.C.*, 396 F.3d 385, 393 (4th Cir. 2005) (finding that city's efforts to enforce local ordinance reflected an important state interest); *Lancaster v. Spartanburg Cnty. Bldg. Codes Dep't*, 370 F. Supp. 2d 404, 407 (D.S.C. 2005) (noting important interest in state court proceedings involving violation of county's property maintenance code). And finally, the third criterion is met because Plaintiff has an adequate state forum to pursue his state and federal claims regarding the County's purported conduct. *See, e.g.*, *Moore*, 396 F.3d at 395 (finding that plaintiff could raise constitutional claims stemming from property citation in state court proceedings, and state court could likewise consider application of local ordinances "in the light of federal constitutional principles"); *Lancaster*, 370 F. Supp. 2d at 408 (noting that plaintiff had "opportunity to raise his federal issues before a state tribunal" following property maintenance citation).

Because all three criteria are satisfied here, the undersigned recommends the Court stay this action for money damages pending the conclusion of the County's state action, Case No. -

2277. *See, e.g.*, *Whitt*, 2018 WL 1090001, at *5; *Ashley v. Rushmore Loan Mgmt. Servs., LLC*, No. 4:16-cv-1969-RBH, 2017 WL 1135294, at *3 (D.S.C. Mar. 27, 2017); *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1075–76 (6th Cir. 1998). As stated above, because this is an action purely for monetary damages, dismissal is not appropriate. *See Whitt*, 2018 WL 1090001, at *5.

The undersigned clarifies here that the recommended stay encompasses damages claims arising under both federal and state law, as the Court cannot determine whether to exercise supplemental jurisdiction over the latter until the conclusion of the County's pending action, which will likely dictate the outcome of at least some of Plaintiff's stayed federal claims. See 28 U.S.C. § 1367(c)(3) (explaining that a federal district court may decline to exercise supplemental jurisdiction over a state law claim if the court has dismissed all claims over which it had original jurisdiction); *Gilbert v. N. Carolina State Bar*, 660 F. Supp. 2d 636, 648 (E.D.N.C. 2009) (declining to dismiss remaining state-law claims pursuant to § 1367(c)(3) where the court had stayed several federal claims to be considered at a later time).

### C.     Pleading Issues

Finally, Defendants briefly ask that "the Court enter an order requiring the Plaintiff to file an amended complaint that complies with Rules 8(a)(2) and 10(b)" of the Federal Rules of Civil Procedure. (Dkt. No. 23 at 6–7.) Rule 8(a)(2) requires that Plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) requires that Plaintiff "state [his] claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). According to Defendants, Plaintiff's "long and rambling" Complaint "makes it impossible for Defendants to discern what claims are actually being alleged and which allegations are intended to support which claims." (Dkt. No. 23 at 7.) In response, Plaintiff states he will file a new complaint "[i]f

necessary," and he asks for "60 days to acquire counsel and to file a new complaint." (Dkt. No. 28 at 3.)

Upon careful review, the undersigned finds that Plaintiff has sufficiently complied with Rule 8(a)(2). Defendants do not point to any specific deficiency on this point, and the Court finds Plaintiff has sufficiently given Defendants fair notice of his claims and the grounds upon which they rest. (*See* Dkt. No. 1.) Also, Plaintiff has numbered the claims in his pleading and has included allegations underneath, specific to each claim. (Dkt. No. 1.) While Plaintiff may not have fully complied with Rule 10(b), pursuant to the principles of liberal construction for *pro se* pleadings, the undersigned finds the action should not be dismissed on this basis. *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))). As for Plaintiff's request for additional time to obtain counsel, Plaintiff will have time to obtain counsel while this case is stayed.

## CONCLUSION

For the reasons discussed above, the undersigned **RECOMMENDS** that the Court **DENY** Defendants' Motion to Dismiss (Dkt. No. 23) and instead **STAY** this action pending the outcome of Plaintiff's ongoing state proceedings in Case No. -2277. The undersigned further recommends the Court allow Plaintiff additional time to effectuate proper service upon Defendants.

**IT IS SO RECOMMENDED.**

13

January 6, 2025  
Charleston, South Carolina

_____  
MARY GORDON BAKER  
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).